YELVERTON, Judge.
This is a suit based on defamation. On appeal, plaintiff complains that the award of damages is inadequate. The defendant did not appeal the finding that he was guilty of a tortious defamation. The trial judge allowed damages of $1. We regard that award as the trial court’s way of expressing its opinion that plaintiff was not entitled to any damages at all. While we agree with the trial court that damages should be held to the very minimum, we do not equate nominal damages with no damages at all. Accordingly, we amend the judgment herein by awarding plaintiff $250.
Plaintiff prayed for damages for mental anguish and embarrassment. A review of *66 the facts is necessary in order to place an evaluation on the case.
The story has three main participants, the boyfriend, the wife and the husband. The boyfriend (Scott) is the plaintiff and the husband (Sylvester) is the defendant. The relationship with Scott started as a normal friendship but as it developed into closer ties between the wife and the boyfriend, domestic trouble developed between the wife and her husband. A concomitant animosity emerged between Scott and Sylvester which grew in its intensity in like proportions that the amor developed between Scott and Mrs. Sylvester.
One day Scott happened to be passing the Sylvester house when he decided to stop and park on the edge of the highway and put the house under surveillance. While he was thus observing, a dispute began on the front porch between Sylvester and his wife. Scott reacted violently: he slammed his car in reverse, backed up to the Sylvester driveway (striking a passing vehicle as he did so), and sped up the driveway to the Sylvester house. He jumped from his car and raced toward the porch. Sylvester, seeing the much larger man approach, retreated into the house. Scott kicked the door in and then proceeded to give Sylvester a severe beating. Sylvester was able to escape long enough to get a shotgun which he used to make Scott leave.
Sylvester was hospitalized as a result of that beating. While he was in the hospital he discussed his problem with his personal physician, Dr. Frank G. Rieger, Jr., who was also a deputy coroner from East Baton Rouge Parish. Sylvester was very concerned about his safety. Scott had threatened and harassed him before the beating and continued the threats and harassment afterwards. Sylvester was frightened and willing to admit it. This was confirmed by both his father and his physician. It was from Dr. Rieger that Sylvester learned the availability of a commitment procedure for persons mentally ill and dangerous. On June S, 1973, accompanied by his father, he went to the coroner’s office. There he discussed the matter with the parish coroner, Dr. Hypolite Landry. He then took action based upon LSA-R.S. 28:52. This statute pertains to the coroner’s authority to order for examination and/or confinement for treatment any person believed to be suffering from a mental illness which causes that person to be dangerous to himself or others. Pursuant to this statute, Sylvester made a written statement under oath in the presence of the coroner to the effect that Scott was in fact suffering from a mental illness which caused him to be dangerous to himself or others and that he should be interdicted and conveyed to an appropriate institution for treatment.
The coroner thereupon gave oral orders to have Scott brought to his office for examination. On June 11, the date that Scott learned of the coroner’s desire to see him, he went to his attorney’s office, picked up his attorney, and together they went to see the coroner. Both the coroner and Dr. Rieger, the deputy coroner and also defendant’s personal physician, were present during the interview with Scott. Both Drs. Landry and Rieger testified that after the briefest of interviews, lasting not more than 20 minutes, it was apparent that Scott was not suffering from any mental illness and he was immediately released.
It was because of the execution and filing of this affidavit and the resulting interview with the coroner and his assistant, that plaintiff alleges gave him mental anguish and embarrassment.
The following comments by the trial judge are appropriate at this point and are quoted as follows:
“This court, having heard the testimony, was convinced that Sylvester had justifiable concern over his safety as even prior to the encounter at his home, he had been harassed, intimidated and beaten by Scott. The coroner and deputy *67 coroner, when they accepted Sylvester’s affidavit, felt that he had justifiable concern for his physical safety as he had been severely beaten in his own home by Scott. When the physician learned Scott’s version and ascertained that an involved, personal triangle was the cause of the problem between Scott and Sylvester they immediately released Scott. Technically, there was no legal or medical justification for Sylvester to sign the affidavit, and in doing so, he subjected himself to whatever damages resulted to Scott from-his actions.
“Plaintiff seeks damages for embarassment and mental anguish. The facts indicate that Scott was inconvenienced for not more than half an hour or so as a result of his incident. Any publicity attendant to same has been generated by him. He has suffered absolutely no financial loss. On the contrary, his business has improved rapidly over the last year even with the people to whom he has related the incident. Additionally, he had just received a substantial loan from the bank. The court feels that only nominal damages mitigated by the facts surrounding plaintiff’s execution of the affidavit, should be awarded.”
To compensate plaintiff here is not easy, for the history of the case does not evoke sympathy for him and it is tempting to let the history of the relationship between the parties color the award of damages. But defendant was guilty of tortious conduct. Plaintiff was damaged. He should be compensated. We are permitted to consider the history of events only to the extent that it may help to illuminate the measure of his mental anguish and embarrassment.
Plaintiff-appellant’s prayer for damages was limited to mental anguish and embarrassment. While we agree with the trial court that damages herein ought to be minimal, we cannot agree that no damages at all should be' awarded. There was no sound basis for Sylvester’s affidavit that Scott should be interdicted and institutionalized for treatment for a mental illness. News that the coroner had ordered his presence in his office for the purpose of a mental examination was bound to have been upsetting. Scott was obviously a man not easily intimidated, but we believe that this intimidated him. However, his fears and his embarrassment were of short duration. He had the presence of mind to pick up his attorney enroute to the coroner’s office. His attorney, who had known Scott for a long time and was acquainted with the circumstances and all of the litigation pending between the Sylvesters and other members of their family, must have been able to assuage Scott’s apprehensions. We doubt, therefore, that Scott was very disturbed by the time he reached the coroner’s office.
In assessing an award herein where the trial court gave none, we are mindful of the teachings of Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) in which the Supreme Court made clear the proper limitations on appellate review of damages. However, we are not here tampering with the discretion of the trial judge in his award for damages. Although on the surface it appears that we are increasing an award from $1 to $250, we do not consider it so. We consider ourselves granting an award where the trial judge granted none. Plaintiff is entitled to a nominal award of $250. We accordingly amend the trial judge’s award from $1 to $250, and as amended, affirm, all at defendant’s costs.
Amended, and as amended, affirmed.